## Case No. 5,104.

FRENCH v. TUMLIN.

[10 Am. Law Reg. (N. S.) 641; 14 Int. Rev. Rec. 140; 6 Am. Law Rev. 367.] [1]

Circuit Court, N. D. Georgia. 1871.

[1] [6 Am. Law Rev. 367, contains only a par tial report.]

Akin, Hammond & Son and Mr. Dougherty, for plaintiff.

Mr. Bleckley, for defendant.

ERSKINE, District Judge. The obvious intention of the plea is to show that there was no consideration for the making of the bond; and, under the Code, want of consideration is a good defence. The object and design of the other matters stated in the plea are, that the judgment is a nullity, because it was rendered in this state whilst the rightful government was overthrown, and its place usurped by a spurious authority; but if not void for that reason, then it was void because it was rendered upon an undertaking which cannot be recognised or enforced in this court, the price and purchase-money of slaves. The other branches of the plea may be passed over for the present. It is to the substantial elements alone of the plea that the court must look in giving judgment.

There is nothing indicated in the plea going to show that the defendants, or either of them, in the action brought by Chisolm in the inferior court of Cass (Bartow) county, had no notice of the action, or that they questioned the jurisdiction and had their plea overruled, and had no further remedy, or that for good reasons they did not appear and defend. And I find nothing in the record before me which states, or from which it can be inferred, that defendants in that suit were not citizens of Georgia, and one or both of them resident of Cass county, when the proceedings were instituted.

Had the inferior court, pending the action in 1861, jurisdiction of the parties and subject-matter of the suit brought by Chisolm against Fields and Tumlin, and if so, was the judgment for the purchase-money of slaves valid? and if valid, then can this court recognise it now, and if necessary enforce it? Neither of these inquiries is free from embarrassment. I learn that these or similar questions now stand for argument on error or appeal before the supreme court of the United States. And had they not risen here, during the progress of a trial at bar, I would have deferred judgment and awaited the decision of the supreme court. But as they are directly presented by the pleadings, I will pass upon them—not with hesitancy in the performance of a duty, yet not without diffidence in my ability to perform it well. I shall be as brief as possible in my remarks.

Looking to the first specific clause in the plea, that the judgment rendered on the 26th of November, 1861, was void, for the reason that it was pronounced during the Rebellion, I refer to the case Cuyler v. Ferrill [Case No. 3,523]. A suit had been instituted in 1862 or 1863, by certain heirs, through guardians, in the so-called superior court of Chatham county, in this state, to partition land. One of these heirs was a citizen of Alabama, the other of Georgia; but Dr. Cuyler, another heir, was a citizen of Pennsylvania, and, at the time the suit was pending, a surgeon in the national army. He was notified, in accordance with the statutory laws of Georgia, by publication, to appear and defend. He did neither. The court ordered the property, as it could not be equitably divided, to be sold, and Cuyler's share of the proceeds invested in Confederate bonds, which was done. The other heirs received their moiety in Confederate treasury notes. After the war, Cuyler filed his bill against Ferrill, who had purchased the property, and the other heirs, to set aside the proceedings. And I decreed them to be, so far as they concerned Dr. Cuyler, utterly null and void, because that tribunal had no jurisdiction of him or his estate. But as to the position of those heirs who had voluntarily sought the aid of that court, I declined to express any opinion. Had it been a point absolutely necessary for decision, I apprehend that I would have been warranted in holding that they or their guardians (as the case might be) were by their own voluntary act estopped from denying the validity of the proceedings in the so-called superior court. In 1868 the supreme court of the United States, in Texas v. White, 7 Wall. [74 U. S.] 700, said: "It is not necessary to attempt any exact definition within which the acts of said state (Texas) government must be treat-

ed as valid or invalid. It may be said, perhaps, with sufficient accuracy, that acts necessary to peace and good order among citizens, such, for example, as acts * * * providing remedies for injuries to person and estate, and other similar acts which would be valid if emanating from a lawful government, must be regarded in general as valid when proceeding from an actual though unlawful government." I think that the court meant to employ the term "remedies" in the ordinary legal and judicial sense, and did not intend to confine it.to the redress of torts and injuries alone, but that it should also apply to the enforcement of contracts. I do not think that the judgment is void for the first special cause alleged in the plea.

The next fact stated in the plea is, that the judgment was for the price and purchase-money of slaves and for no other cause whatsoever. Is the judgment invalid for this reason? The opinions which I have always entertained on the subject of slavery—the buying and selling of human beings like sheep in the shambles—must be here laid out of view; for it is the duty of the judge to declare the law of the case before the court, and to forget, while discharging his official duties, his own private opinions. Time will not permit me to give a full exposition of my views on this question. Therefore, in brief, if the contract was for the price and purchase-money of slaves, and that contract was the immediate subject of the action upon which the judgment of the 25th of November, 1861, was founded, the judgment, when rendered, was, in the opinion of this court, valid. But it is said that even if valid then it is not so now, or if valid now it cannot be recognised, or (if necessary) enforced by this court; and the first paragraph of section 17, art. 5, of the state constitution of 1868 is referred to. It is as follows: "No court or officer shall have, nor shall the general assembly give, jurisdiction or authority to try or give judgment on or enforce any debt, the consideration of which was a slave or slaves, or the hire thereof." The word "judgment" is not in this paragraph, but it is necessarily included in the term "debt," a judgment being but a debt of record—a chose in action—and in this state negotiable by endorsement or written assignment like bills or promissory notes; but the transferee takes it "subject to the same equities and defences as the original plaintiff in judgment was." This provision of the constitution has been before the supreme court of the state on more than one occasion. The leading case, however, is Cobb v. Shorter, 39 Ga. 285. The opinion of the court (Warner, J., dissenting) was delivered by Chief Justice Brown. Shorter, as bearer, sued Cobb upon a promissory note made in 1861, and payable twelve months thereafter; the note was given for slaves, and the court below dismissed the action for

want of jurisdiction, and the supreme court of Georgia affirmed the judgment.

I here remark that it was in accordance with certain acts of congress that the state convention was called. A constitution was framed and submitted to congress, and certain portions of it were stricken out by congress. But the provision which I have just read was allowed to remain. On this matter the chief justice in his opinion says: "But it is the constitution as amended and approved by the congress of the United States, by virtue of their authority as the conquering power, to dictate a form of government to the conquered, which is accepted by the people of the state as an act of obedience to the conqueror, and not as a matter of will or sanction." He afterwards says, "that congress is presumed to have sanctioned every word and line of it which, upon examination, congress did not, while amending it, require to be stricken out or changed." From these propositions the chief justice draws the following corollary: "The state has not pretended to destroy the obligation of this class of contracts. She has simply said, with the sanction of congress in forming her new government, that her (the state's) courts shall have no jurisdiction to enforce them." In Luther v. Borden, 7 How. [48 U. S.] 42, the court said that "it rests with congress to decide what government is the established one in a state. For, as the United States guarantee to each state a republican government, congress must necessarily decide what government is established in a state, before it can decide whether it is republican or not." This question is wholly political, its determination belongs exclusively to congress, and, therefore, it is in no wise judicial in its nature. And it must not be forgotten that the executive, judicial, and legislative departments of the United States, though co-ordinate branches of the government of the nation, are, in their powers and functions, separate and distinct. In rejecting certain provisions in the constitution of the state, or in allowing that relating to the inhibition placed upon the courts to take jurisdiction of debts, the consideration of which was a slave or the hire thereof, congress did not, I apprehend, in any wise mean to interfere with the constitutional powers and functions of the judiciary department of the government, any more than the judiciary would assume to control the admission to congress of senators or representatives. I cannot think otherwise than that congress intended to leave the interpretation and construction of that provision in the state constitution exclusively and absolutely with the courts. This provision does not declare that contracts for the purchase of slaves shall be void, but that the courts shall not have jurisdiction or authority to enforce them. Does it, then, contravene any portion of the 10th section of the 1st article of the constitution of the

United States, which declares that "no state shall pass any bill of attainder or ex post facto law, or law impairing the obligation of contracts?" In the case of Cohen v. Virginia, 6 Wheat. [19 U. S.] 414, the court said, that "the constitution and laws of a state, so far as they are repugnant to the constitution of the United States, are absolutely void." And in Cummings v. Missouri, 4 Wall. [71 U. S.] 277, the court, Mr. Justice Field delivering the opinion, declared certain parts of the constitution of the state of Missouri null and void, because they were in contravention of the 1st and 2d clauses of this section.

I will now endeavor to ascertain and determine whether this provision in the state constitution impairs the obligation of contracts. For this purpose the case of Von Hoffman v. City of Quincy, 4 Wall. [71 U. S.] 535, may be relied upon, containing, as it does, a clear and exact exposition of this most important subject. Mr. Justice Swayne, in delivering the opinion of the court, said: "It is also settled that the laws which subsist at the time and place of the making of the contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to and incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement. Without the remedy, the contract may indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfilment upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the constitution against invasion. It is competent for the states to change the form of the remedy or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired." Applying these citations to the provision in the state constitution now under consideration, it will become obvious that it is in direct conflict with the 10th section of the 1st article of the constitution of the United States; indeed, it is not only an impairment of the obligation of the contract, but a denial of all remedies. And, in the language of Mr. Justice Swayne, "A right without a remedy is as if it were not. For every beneficial purpose it may be said not to exist." Von Hoffman v. City of Quincy, 4 Wall. [71 U. S.] 554. If contracts, entered into previously to the promulgation of the president's proclamation of emancipation, the consideration of which was the price and purchase-money of slaves, were then valid under the laws of the United States and of the state of Georgia, the aid of the courts must be given, if demanded, to enforce them. But if such contracts were invalid, the provision in the state constitution is mere surplusage. There must be judgment quod recuperet on this plea.